ORIGINAL
D & F
C/M

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ SEP 13 2006 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JAMES D. THELUSMA,

          Plaintiff,

-against-

THE NEW YORK CITY BOARD OF
EDUCATION and EUCLID MEJIA,

          Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
Case No. 02-CV-4446 (FB)

*Appearances:*
*For the Plaintiff:*
STEPHEN T. MITCHELL, ESQ.
67 Wall Street
Suite 2211
New York, NY 10005

*For the Defendant:*
MICHAEL A. CARDOZO, ESQ.
Corporation Counsel of the City of New York
By: ISSAC KLEPFISH, ESQ.
100 Church Street
New York, NY 10007

**BLOCK, Senior District Judge:**

      Plaintiff, James Thelusma ("Thelusma"), a former provisional teacher, brings a retaliation claim against the New York City Board of Education and Euclid Mejia ("Mejia"), the principal at the school where Thelusma taught, under 42 U.S.C. § 1981, the New York State Human Rights Law, N.Y. Exec. Law § 296 and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-502. Thelusma contends that, after he complained about comments Mejia made regarding his accent, Mejia engaged in a series of retaliatory acts against him. Defendants move for summary judgment. The motion is granted.

1

# I.

On September 24, 2001, Mejia and Assistant Principal Edward DeMeo ("DeMeo") conducted a classroom observation of Thelusma's mathematics class. In a written evaluation, they commented about a number of positive features of the lesson, but also raised some critical concerns, including Thelusma's use of language and his inability to effectively communicate with his students. In those respects, the report stated:

> When writing the Aim [of the lesson] and/or subsequent information on the board, you need to look more closely at the language used. For instance, when writing/explaining "theorem," you wrote "Theorm." Also, the Aim literally has a numbering problem. "What are the sums of the interior angles of a triangle" should have read as what is the sum of the interior angles of a triangle? Sum is singular and takes a singular verb. . . .
>
> While explaining the theorem, you stated: "I can draw a line on the outside we call dis a terum!" Coupling these verbal digressions with the quick pacing and soft-spoken nature, made much of the lesson difficult to hear. Thus, following the Mathematics involved strained the learning process. Communication is critical for the student learning any subject area let alone Mathematical skills. A greater concentration in communication is needed to support your Mathematical skills.

*See* Decl. Of Isaac Klepfish, Ex. G (September 24, 2001 Report). The "Recommendation" part of the report, recommended that Thelusma "improve [his] English skills and his pronunciation." *Id.*

On November 1, 2001 Thelusma filed a complaint with the New York City Public School's Office of Equal Opportunity ("OEO"), stating: "I believe I was discriminated against, when in my recent observation, Mejia was critical of my accent and

suggested I take 'accent reduction classes.'" See Decl. Of Isaac Klepfish, Ex. U (OEO Complaint). Thelusma's communication problems were noted in a number of subsequent evaluations and on June 13, 2002, Thelusma was informed that "based on an Unsatisfactory Rating of [his] service, [he would] be terminated after June 26th." See Id., Ex. T (June 13, 2002 Letter from Lou Barrella).

Thelusma was deposed after he initiated his retaliation lawsuit and testified that aside from the "written observation critical of my accent [in his September 24, 2001 evaluation]," Mejia never used language indicating any racial animosity towards him. See Pl.'s Mem. of Law, Ex. B (Dep. of James Thelusma) at 148:17-148:20.

In opposing summary judgment, Thelusma has submitted an affidavit claiming that he "believed that [Mejia and DeMeo] racially discriminated against me because I am a Haitian of African descent." Pl.'s Mem. of Law, Ex. A (Affidavit of James Thelusma ¶2). In support of this belief, Thelusma states in this affidavit that "within days after receiving" the September 24, 2001 written evaluation report he "complained directly to Euclid Mejia and Edward DeMeo, in conversation, about the report and told them that the contents of the aforementioned report were inaccurate and that their statements about [m]y accent were racially offensive and discriminatory." Id. ¶3. He further attests that he "repeated my charge of racial discrimination with respect to the September 24, 2001 report directly to Mr. Mejia and Mr. DeMeo in conversation more than once" prior to filing his discrimination charge with the OEO. Id. ¶4.

Thelusma's opposition papers also include an affidavit by a former assistant

3

principal at Thelusma's school, stating that she "never found [Thelusma's] accent to be an impediment to [Thelusma's] teaching or to his satisfactory teaching performance." *Id.*, Ex. D.

## II.

Although a retaliation claim under § 1981 is relegated to discrimination based upon race, and not national origin, *see St. Francis College v. Al- Khazraji*, 481 U.S. 604, 613 (1987); *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998), the Court will liberally construe Thelusma's complaint to come within the statute's embrace. *See, e.g., Rumala v. New York City Transit Auth.*, 2005 WL 2076596, *8-*9 (E.D.N.Y. Aug. 26, 2005) (construing complaint as one of ancestry, as well as national origin, when plaintiff's claims included alleged discriminated based on an alleged accent); *Franchitti v. Bloomberg, L.P.*, 2004 WL 2366183, *2 -*4 (S.D.N.Y. Oct. 20, 2004) (inferring that § 1981 claim was based on ancestry when plaintiff's accent was one of the alleged bases for discrimination).

To survive summary judgment, a plaintiff must establish that he engaged in a protected activity. *See Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999). To meet this burden, the plaintiff "need not establish that the conduct he opposed was in fact illegal," but rather, that he possessed a "good faith, reasonable belief" that the underlying employment practice was unlawful at the time he opposed it. *See id.* (citing *Manoharan v. Columbia Univ. College of Physicians and Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).

Whether a belief is reasonable is assessed "in light of the totality of the

circumstances." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (citing *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)). While "subjective sensibilities of an alleged victim may be a relevant consideration in determining whether conduct by a supervisor . . . is legally sanctionable," the record must still reflect a "semblance of [discriminatory] motivation in the events or conversation which [plaintiff] testifies" to make a "rational finding that "[plaintiff's belief] - *even if genuine* - was reasonable." *See Galdieri-Ambrosini*, 136 F.3d at 292 (emphasis added).

The Court recognizes that there surely may be cases where comments about a person's accent may be probative of discriminatory intent, *see e.g. Rivera v. Baccarat*, 10 F. Supp. 2d 318, 324 (S.D.N.Y. 1998), *rev'd on other grounds*, 205 F.3d 1324 (2d Cir. 2000), but this is not such a case. There is simply nothing in the September 24, 2001 evaluation – which was the foundation for Thelsuma's complaints to his evaluators and his OEO charge – that contains any racially discriminatory comments about Thelusma's accent. To hold otherwise would mean that any comment by an evaluator about a minority teacher's difficulty in communicating with students could expose the evaluator to a retaliation claim should that teacher thereafter be the subject of an adverse employment action. *See Manessis v. New York City Dept. of Transp.*, 2003 WL 289969, at *8 (S.D.N.Y. Feb, 10, 2003) (citing *Watt v. New York Botanical Garden*, 2000 WL 193626, at *7 (S.D.N.Y. Feb. 16, 2000) ("it would be an inferential leap to infer that a comment about an employee's accent suggests an underlying bias against persons of that national origin."). The Court will not place such a chill on a supervisor's responsibility to render an honest evaluation of a teacher's

5

classroom performance.

Moreover, in the present case, Thelusma acknowledged at his deposition that other than the evaluation report, which he misconstrued as being critical of his accent, "Mejia never used any language indicating any racial animosity towards him. Even if Mejia recommended that Thelusma take "accent reduction classes," such advice would be consistent with a beneficent design to afford him the opportunity to improve his communication skills, an absolute prerequisite for adequate job performance by a teacher, rather than evidence of a discriminatory intent. *See also Meng v. Ipanema Shoe Corp.*, 73 F. Supp. 2d 392 (S.D.N.Y. 1999) (Asian customer service representative's accent properly considered in her termination because it interfered with her job performance) (quoting *Fragante v. City and County of Honolulu*, 888 F.2d 591, 596-597 (9th Cir. 1989)); *see also Mejia v. New York Sheraton Hotel*, 459 F. Supp. 375, 377 (S.D.N.Y. 1978) (Dominican chambermaid properly denied a promotion to front desk because of her "inability to articulate clearly or coherently and to make herself adequately understood in . . . English"). That a prior evaluator, such as Pike, did not discern a communication problem during a previous evaluation cannot suffice to transform the subject evaluation into one evidencing racial animus.

In sum, although Thelusma may have harbored the belief that he was the target of invidious discrimination because of his Haitian accent, it was not a reasonable belief and hence could not serve as the necessary predicate for his retaliation lawsuit.

## III.

Having disposed of Thelusma's federal claim, the court declines to exercise supplemental jurisdiction over his remaining State and City Law claims, without prejudice. *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (where, as here, all federal claims have been eliminated, concerns of judicial economy, convenience, fairness and comity "point toward declining to exercise jurisdiction over the remaining state-law claims.").

## CONCLUSION

Defendants' motion for summary judgment is granted, and the complaint is dismissed.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Dated: September 12, 2006
Brooklyn, New York